FILED
2017 Apr-04 PM 04:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JESSICA D. STRONG, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) |
| ANGIODYNAMICS, INC., | )   2:16-cv-01800-LSC ) ) |
| Defendant. | ) ) ) |

**MEMORANDUM OF OPINION**

Plaintiff Jessica D. Strong ("Strong") brings the instant action against her former employer, AngioDynamics, Inc. ("AngioDynamics"), alleging claims for sexual harassment, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and a state-law claim for outrage. Before this Court is AngioDynamics's motion to dismiss (Doc. 10), which has been fully briefed by the parties and is ripe for review. For the reasons described more fully herein, AngioDynamics's motion is due to be granted in part and denied in part.

I.  **BACKGROUND**[1]

AngioDynamics designs, manufactures, and sells medical, surgical, and diagnostic devices to healthcare providers for use in treating patients. It employs sales representatives to market its products to those providers. Strong began her employment with AngioDynamics on September 9, 2013, as the company's principal sales representative for Alabama and the Florida panhandle.

A few weeks later, Strong received a lead indicating that Dr. Safwan Jaalouk ("Jaalouk"), a cardiologist, was interested in purchasing an AngioVac, a product manufactured by AngioDynamics, for his group's practice. Strong contacted representatives at Jaalouk's practice to set up a meeting with him, which was scheduled for November 2013.[2] Strong alleges that at that meeting, Jaalouk "seemed very interested" in the AngioVac and wanted to introduce the product to the other members of his practice before deciding to purchase it. AngioDynamics, through its salespeople, commonly organized informational dinners for interested physicians, which featured a presentation by and question-and-answer session with the product's inventor. Strong and Jaalouk planned such an event for the physicians in Jaalouk's practice to be held in January 2014. The dinner went very

---

[1] In evaluating a motion to dismiss, this Court "accept[s] the allegations in the complaint as true and construe[s] the facts in the light most favorable to the plaintiff." *Johnson v. Midland Funding, LLC*, 823 F.3d 1334, 1337 (11th Cir. 2016).
[2] Strong's complaint alleges that this meeting was scheduled for November 2014, but it appears from the parties' submissions that some of the dates in the complaint give the incorrect year.

well, according to Strong, and Jaalouk told Strong that he and his colleagues would further discuss whether to purchase the AngioVac.

Over the next few months, Strong and Jaalouk communicated by phone, email, and text message about the progress of the sale. Strong also met informally with Jaalouk twice. She alleges that her "correspondence and personal interactions with Dr. Jaalouk were, at all times, professional and principally concentrated on fostering a business relationship." After learning that the physicians in Jaalouk's practice group were to meet on March 21, 2014, to discuss the AngioVac, Strong contacted Jaalouk "to see if he could meet with her for purposes of reviewing answers to anticipated misgivings that likely would be raised by other physicians at the meeting on March 21." Jaalouk agreed to meet Strong for dinner on March 20.

On March 19, 2014, Jaalouk texted Strong to ask what time she would be coming into town the following day. When Strong informed Jaalouk that she would arrive around 3:00 PM, Jaalouk responded, "Super flexible girl. I like it lol." Strong alleges that although the text message made her feel "uneasy," she did not respond and decided to proceed with the dinner plans because she did not want to lose the potential business with Jaalouk's practice group. She claims that Jaalouk "made a number of inappropriate comments" at the dinner on March 20, which made her "increasingly more uncomfortable," but she "kept the conversation centered on

the product." After dinner, according to Strong, she was walking to her car when Jaalouk tried to kiss her. Strong "pushed him away and explained to him that their relationship was strictly professional." Jaalouk then "acknowledged that [his] conduct was inappropriate."

Nonetheless, because she did not want "to compromise the possible sale," Strong did not report the allegedly harassing incident to her manager or to any other AngioDynamics official at that time. She continued to email or text Jaalouk every three weeks to ask about the sale's progress, but he stopped responding to her messages in June 2014. On July 22, 2014, Strong "happened to run into" Jaalouk while working at his hospital and asked if they could meet later that day to discuss his practice group's decision to purchase the AngioVac. Jaalouk initially agreed to meet with Strong, but he texted her a few hours later to request that she not text him again. Strong then emailed Jaalouk to "express[] her disbelief at what appeared to be his anger when he was the one who had acted inappropriately." She also told Jaalouk that she would no longer do business with him and could arrange for another AngioDynamics representative to assist him if his practice group desired to purchase the AngioVac.

On July 24, 2014, Strong's manager, Holly Koufos ("Koufos") asked her about the AngioVac sale to Jaalouk's practice. Strong then explained the situation

and forwarded to Koufos the email she had sent to Jaalouk about his behavior. Several weeks later, on August 18, 2014, Koufos informed Strong that AngioDynamics's human resources department had seen the email and wanted to speak with her about it. According to Strong, Koufos also told Strong that "if she were in [Strong's] position, she would resign." Strong met with Moira Fitzgerald ("Fitzgerald"), AngioDynamics's human resources representative, shortly after. Strong described the situation to Fitzgerald, "reiterated the fact that she had apologized to Dr. Jaalouk even after he sexually harassed her, and ensured [Fitzgerald] that everything was fine." On August 28, 2014, Fitzgerald emailed Strong a summary of their conversation, which Strong felt "contained numerous falsities[] and failed to mention several important things [Strong] said." Because Strong was travelling to a sales meeting that day, she was unable to respond to Fitzgerald's email but sent "extensive edits" to Fitzgerald "not long after."

Strong received a Written Counseling Warning from AngioDynamics on September 3, 2014, which "falsely accused her of poor performance, persistent excessive tardiness, non-professionalism, and a bad attitude." The warning also required Strong to make four AngioVac sales, one laser sale, and obtain at least "90% to quota YTD" within sixty days or face termination. According to Strong, these requirements were "patently unattainable benchmarks that guaranteed [her]

termination." AngioDynamics terminated Strong's employment on November 10, 2014, when she failed to meet the objectives in the Written Counseling Warning.

## II. STANDARD OF REVIEW

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, in order to withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint "must plead enough facts to state a claim to relief that is plausible on its face." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347–48 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Stated another way, the factual allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). A complaint that "succeeds in identifying facts that are suggestive enough to render [the necessary elements of a claim] plausible" will survive a motion to dismiss. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.* If the pleading "contain[s] enough information regarding the material elements of a cause of action to support recovery under some 'viable legal theory,'" it satisfies the notice pleading standard. *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011) (quoting *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683–84 (11th Cir. 2001)).

Additionally, AngioDynamics asks this Court to consider, among other evidence, text messages and email correspondence related to the events alleged in the complaint in ruling on the motion to dismiss. This Court declines to do so. As a general rule, "[t]he scope of review must be limited to the four corners of the complaint" because this Court is required "to accept the allegations in the complaint as true." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). Other materials attached to a defendant's motion to dismiss may be

considered only if (1) the plaintiff refers to the document in the complaint; (2) the document is central to the plaintiff's claim; and (3) the authenticity of the document is not in dispute. *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (per curiam) (permitting consideration of insurance policy). The fact that a complaint may "refer[] to the existence" or "rel[y] on the effect" of a particular document does not make that document central to the plaintiff's claim. *Id.*

However, even assuming the exhibits attached to AngioDynamics's motion to dismiss satisfy the above criteria, AngioDynamics purports to use the materials to attack the merits of Strong's claims, rather than the manner in which Strong has pled those claims in her complaint. To dismiss Strong's hostile work environment claim, for example, on the basis that the conduct she alleges is not sufficiently severe or pervasive is, in this Court's view, a factual finding that is more appropriately made at the summary judgment stage, when discovery has been completed. For this Court to consider AngioDynamics's evidence and convert its motion to dismiss into a motion for summary judgment, Strong must receive the opportunity to present her own evidence in support of her claims. *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1267 (11th Cir. 2002) ("The district court is required to notify the parties that the motion has been converted, and give the

parties 10 days in which to supplement the record."). She has had no such opportunity. This Court therefore reviews only Strong's complaint and the documents attached to that complaint.

## III. Discussion

### A. Sexual Harassment/Hostile Work Environment

1. Timeliness

AngioDynamics first argues that Strong's sexual harassment and hostile work environment claims are due to be dismissed because Strong did not file an EEOC charge within 180 days of March 20, 2014. Strong concedes that her sexual harassment claim is untimely. (Doc. 23-1 at 13.) It is therefore due to be dismissed with prejudice.

With respect to her hostile work environment claim, Strong responds that her EEOC charge is timely because it was filed within 180 days of November 10, 2014, the date of her termination. AngioDynamics does not dispute that Strong filed an EEOC charge within 180 days of her termination date; however, it argues that the incidents Strong alleges constitute a hostile work environment occurred in March 2014, a date more than 180 days before she filed her EEOC charge.

To bring a valid claim under Title VII, "a plaintiff must file a timely charge of discrimination with the EEOC within 180 days of the last discriminatory act."

*H&R Block E. Enters. v. Morris*, 606 F.3d 1285, 1295 (11th Cir. 2010) (per curiam). Because a hostile work environment constitutes a single unlawful employment practice, a hostile work environment claim is timely "so long as one act contributing to the claim occur[red] within the filing period." *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1258 (11th Cir. 2003) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)). Conduct occurring outside the 180-day period may still be considered as part of the claim "for the purposes of determining liability." *Morgan*, 536 U.S. at 117.

In pleading her hostile work environment claim, Strong states that AngioDynamics subjected her to a sexually hostile work environment by placing "insurmountable demands" on her and by "allowing or condoning the sexual harassment of female employees." Specifically, she alleges that once she informed AngioDynamics on July 24, 2014, that Jaalouk had harassed her, Koufos encouraged her to resign, and Fitzgerald inaccurately summarized their meeting about the incident. Strong also alleges that she was then issued a Written Counseling Warning on September 3, 2014, with goals that were unattainable and certain to result in her termination. She was terminated on November 10, 2014, after failing to satisfy the objectives in the warning. Without expressing an opinion at this stage as to the merits of Strong's claim, it is clear that at least one act Strong

alleges to contribute to the hostile work environment—her termination—occurred within the 180 days before she filed her EEOC charge.[3] Strong's hostile work environment claim will not be dismissed as untimely.

    2. Failure to State Claim

AngioDynamics next contends that Strong's hostile work environment claim is due to be dismissed because the conduct she alleges is not sufficiently severe or pervasive, nor is it based on her sex. A plaintiff adequately pleads a claim for hostile work environment if she alleges (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment and create an abusive working environment; and (5) a basis exists for holding the employer liable. *Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1195 (11th Cir. 2016). Strong has sufficiently pled each of these elements. She alleges that AngioDynamics "condon[ed] the sexual harassment of female employees" by essentially punishing her for confronting Jaalouk about his behavior. She also alleges that AngioDynamics changed the terms and conditions of her employment by imposing

---

[3] It is unclear exactly when Strong first filed a charge with the EEOC. AngioDynamics gives the date as December 19, 2014, but the copy of the charge attached to Strong's complaint is dated March 13, 2015. Because both of these dates are within 180 days of November 10, 2014, the date of Strong's termination, the exact date Strong first contacted the EEOC is immaterial to this Court's determination of the timeliness issue.

"insurmountable demands" on her, in the form of performance measures likely to result in her termination. To the extent that AngioDynamics contends that Strong's hostile work environment claim simply restates her retaliation claim, a plaintiff may allege a claim for retaliatory hostile work environment. *Gowski v. Peake*, 682 F.3d 1299, 1311–12 (11th Cir. 2012) (per curiam) (recognizing cause of action for retaliatory hostile work environment). But AngioDynamics's arguments are best reserved for the summary judgment stage, when this Court will have more evidence before it on which to base its decision. AngioDynamics's motion to dismiss is due to be denied as to Strong's hostile work environment claim.

### B. Retaliation

AngioDynamics avers that Strong's retaliation claim is due to be dismissed because she did not participate in statutorily protected activity, nor has she demonstrated that her participation in such activity was the but-for cause of her termination. Strong responds that her informal complaint to Koufos on July 24, 2014, qualifies as statutorily protected activity and that the issuance of the Written Counseling Warning on September 3, 2014—which qualifies as an adverse employment action—is sufficiently close in time to the informal complaint as to establish a causal connection. AngioDynamics replies that Strong's conversation with Koufos was not a "complaint."

To establish a claim for retaliation, a plaintiff must plead that (1) she was engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1310 (11th Cir. 2016). An informal complaint that "explicitly or implicitly communicate[s] a belief that [the conduct suffered by the plaintiff] constitutes unlawful employment discrimination" is protected activity. *Id.* at 1311. Similarly, an adverse employment action need not be as serious as outright termination but may also include "adverse actions which fall short of ultimate employment decisions," such as written reprimands. *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1455, 1456 (11th Cir. 1998). The plaintiff's employer must have been motivated by her complaint in issuing the discipline for a causal link to exist. *Booth v. Pasco Cnty., Fla.*, 757 F.3d 1198, 1207 (11th Cir. 2014) ("Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013)).

Strong has alleged facts to satisfy these elements for purposes of a motion to dismiss. First, she claims that when Koufos asked her about the progress of the AngioVac sale to Jaalouk's practice, Strong explained that Jaalouk had sexually harassed her and forwarded to Koufos the email she had sent to Jaalouk the day

before. It is clear that Strong was then intending to notify Koufos that she had been sexually harassed. The law does not require Strong to make a formal complaint in order to engage in statutorily protected activity, and whether her conduct satisfies the additional "good faith, reasonable belief" requirement, *see Furcron*, 843 F.3d at 1311, is a matter to be assessed at the summary judgment stage.

Further, with respect to the causation element, Strong alleges that she informed Koufos about the sexual harassment on July 24, 2014, and Koufos encouraged her to resign three weeks later because AngioDynamics's human resources department knew that Strong had confronted Jaalouk by email. Strong also states that Fitzgerald's summary of her conversation with Strong about the harassment misrepresented or omitted Strong's statements and contained false information skewed against Strong. Shortly after her meeting with Fitzgerald, Strong was issued a Written Counseling Warning that she alleges falsely accused her of, among other issues, poor performance and a bad attitude. As a result of the warning, Strong was given performance objectives that she contends were unlike those given to other territorial sales managers and were impossible to meet for someone who had been with the company for the short amount of time she had worked there. When she did not meet those goals, Strong was terminated on November 10, 2014. These facts, as alleged in her complaint, establish a causal

connection between her complaint to Koufos and the adverse employment actions she suffered after that complaint. AngioDynamics's motion to dismiss is thus due to be denied as to Strong's retaliation claim.

### C. Outrage

In her opposition to AngioDynamics's motion to dismiss, Strong concedes that her state-law claim for outrage should be dismissed. (Doc. 23-1 at 16.) Therefore, Strong's outrage claim is due to be dismissed with prejudice.

### IV. Conclusion

As stated above, AngioDynamics's motion to dismiss (Doc. 10) is due to be granted in part and denied in part. Strong's Title VII sexual harassment claim and state-law outrage claim are due to be dismissed with prejudice. Her Title VII claims for hostile work environment and retaliation remain. A separate order consistent with this opinion will be entered contemporaneously.

**DONE** and **ORDERED** on April 4, 2017.

_____
L. Scott Coogler
United States District Judge

186289